EXHIBIT 4



## EMERGENCY MANAGER
## CITY OF FLINT
## GENESEE COUNTY MICHIGAN

### ORDER No. 21

### P.O.L.C. - FLINT POLICE CAPTAINS AND LIETENANTS UNION RETIREE INSURANCE RECIPIENTS

BY THE POWER AND AUTHORITY VESTED IN THE EMERGENCY MANAGER ("EMERGENCY MANAGER) FOR THE CITY OF FLINT, MICHIGAN ("CITY') PURSUANT TO MICHIGAN'S PUBLIC ACT 4 OF 2011, THE LOCAL GOVERNMENT AND SCHOOL DISTRICT FISCAL ACCOUNTABILITY ACT, ("PA 4"); MICHAEL BROWN, THE EMERGENCY MANAGER, ISSUES THE FOLLOWING ORDER:

On March 16, 2011, the Local Government and School District Fiscal Accountability Act, Public Act 4 of 2011, ("Public Act 4") was enacted to safeguard and assure the fiscal accountability of units of local government; to preserve the capacity of units of local government to provide or cause to be provided necessary services essential to the public health, safety and welfare of citizens; and

Pursuant to Public Act 4, the Emergency Manager has broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the City of Flint and its capacity to provide or cause to be provided necessary services essential to the public health, safety and welfare; and

Pursuant to Public Act 4, the Emergency Manager acts in place of local officials, specifically the Mayor and City Council, unless the Emergency Manager delegates specific authority; and

Public Act 4 empowers the Emergency Manager to issue the orders the Manager considers necessary to accomplish the purposes of the Act and any such orders are binding on the local officials or employees to whom they are issued. **Section 19(1)** provides that an Emergency Manager may take on one or more additional actions with respect to a local government in receivership: (g) Make, approve or disapprove any appropriation, contract, expenditure..."; (k) After meeting and conferring with the appropriate bargaining representative and, if in the emergency manager's sole discretion and judgment, a prompt and satisfactory resolution is unlikely

to be obtained, reject, modify, or terminate 1 or more terms and conditions of an existing collective bargaining agreement. The rejection, modification, or termination of 1 or more terms and conditions of an existing collective bargaining agreement under this subdivision is a legitimate exercise of the state's sovereign powers if the emergency manager and the state treasurer determine that all of the following conditions are satisfied...; (I) Act as sole agent of the local government in collective bargaining with employees or representatives and approve any contract or agreement; (ee) Take any other action or exercise any power or authority of any officer, employee, department, board, commission, or other similar entity of the local government, whether elected or appointed, relating to the operation of the local government. The power of the emergency manager shall be superior to and supersede the power of any of the foregoing officers or entities...; and 19(2) ...the authority of the chief administrative officer and governing body to exercise power for and on behalf of the local government under law, charter, and ordinance shall be suspended and vested in the Emergency Manager.

On April 23, 2012, I requested that the State Treasurer concur in my determination under Section 19(k) of the Local Government and School District Fiscal Accountability Act, Public Act 4 of 2011 (Act) to allow modification of the Flint Police Captains and Lieutenants Union collective bargaining agreements as they apply to retiree healthcare coverage.

On April 24, 2012, the State Treasurer concurred with my determination and made his separate determination (see attached) that the four conditions of Section 19(k) of the Act had been satisfied.

**It is hereby ordered:**

The Flint Police Captains and Lieutenants Union collective bargaining agreements as applied to retiree healthcare coverage are modified as follows:

Article 23.    Hospitalization Insurance

The Employer agrees to provide eligible retirees and their eligible spouses and dependents healthcare coverage subject to the terms below:

Section 1.

The City shall not provide healthcare coverage for the retiree's spouse if the spouse is eligible to receive paid healthcare coverage through an employer or former employer of the spouse. As a condition of continued spousal healthcare coverage under this section, the City may require that a retiree file a yearly affidavit attesting that the spouse is eligible for no other employer-paid healthcare coverage.

Section 2.

(i) BCBSM Community Blue PPO Plan CB 12 PPO with $1,000/$2,000 deductible and, for those employees who retired after July 1, 2000, $10, $40, $80 prescription drug coverage;

(ii) Health Plus Plan DVDF and, for those employees who retired after July 1, 2000, $20, $40, $60 prescription drug coverage;

2

      (iii)    McLaren Health Plan C6 and, for those employees who retired after July 1, 2000, $10, $40, $80 prescription drug coverage

The Employer may offer a high deductible plan in conjunction with a health savings account, to be offered in a special open enrollment not subject to subsection (c) below.

These health coverage plans will include a mandatory mail-order maintenance prescription drug program for retirees. Retirees may change their coverage elections during an open enrollment held before July 1, 2012, and during subsequent annual enrollment periods scheduled by the Employer. Plan coverage will be subject to the coverage terms and regulations of each carrier.

(b)    The Employer may, at its discretion, amend the health coverage plans offered, add new health coverage plans, or remove health coverage plans. The Employer may change the open enrollment periods for existing health coverage plans, but not more often than twice annually.

(c)    The Employer reserves the right to change or discontinue the existing health insurance benefit program in response to the Patient Protection and Affordable Care Act ("PPACA"), as amended. This includes the right to respond to regulations issued under the PPACA or judicial interpretations of the PPACA.

(d)    The City's contribution for a retiree's health coverage, and to the HSA, if applicable, shall be the lesser of (i) the applicable annual single, double or family coverage contribution limits provided in Section 3 of the Michigan Publicly Funded Health Insurance Contribution Act, 2011 PA 152, as adjusted by the State Treasurer for each subsequent coverage year, or (ii) the actual annual costs or illustrative rate for the elected health coverage, plus contributions to the Employee's HSA, if applicable. The retiree will pay any premium contributions that exceed the amount contributed by the employer through pension check deductions.

A City of Flint retiree aged sixty-five (65) or over will be covered by a Medicare supplemental plan at the Employer's expense, subject to the contribution limits provided in Section 3 of the Publicly Funded Health Insurance Contribution Act, 2011 PA 152, and the retiree must enroll in and pay for Medicare Supplemental Part B. The spouse of a City of Flint retiree aged sixty-five (65) or over will be covered by a Medicare supplemental plan at the Employer's expense, subject to the contribution limits provided in Section 3 of the Publicly Funded Health Insurance Contribution Act, 2011 PA 152, but the spouse must enroll in and pay for Medicare Supplemental Part B.

All coverage shall terminate upon the death of the retiree; except where the retiree selected a Survivorship pension for their spouse and such coverage shall continue as long as the retirees spouse continues to receive retirement pension benefits.

A City of Flint retiree may purchase healthcare coverage for the retiree's spouse or dependents on the same terms as offered to current regular Employees, and at the prevailing group rate for the selected plan. The retiree must agree to deduction of premium costs from the retiree's pension payments.

The Human Resources Director shall immediately implement the contract changes set forth above and incorporate those into the collective bargaining agreement between the City of Flint and the

Flint Police Captains and Lieutenants Union.

This Order shall have immediate effect.

This Order may be amended, modified, repealed or terminated by any subsequent order issued by the Emergency Manager.

Dated: April 25, 2012    By: *Michael K. Brown*
Michael K. Brown
Emergency Manager
City of Flint

xc:   State of Michigan Department of Treasury
      Mayor Dayne Walling
      Flint City Council
      Inez Brown, City Clerk

S:\P. Bade\EM2011\Orders\Order.No.21.Retirees.Police.Cpt.Lts.doc

4



CITY OF FLINT
OFFICE OF EMERGENCY MANAGER
MICHAEL K. BROWN

April 23, 2012

Hon. Andrew Dillon, Treasurer
State of Michigan
Michigan Department of Treasury
Lansing, MI 48922

Re:   City of Flint / Action Under Section 19(k) of the Local Government and
      School District Accountability Act
      Police Officers Labor Council, Police Captains and Lieutenants

Dear Treasurer Dillon:

During my tenure as the Emergency Manager for the City of Flint, I have taken steps to reduce the cost of active employee and retiree healthcare. During the course of these efforts, I have worked with Cornerstone Municipal Advisory Group ("Cornerstone") in reviewing the various health insurance plans provided to both active employees as well as retirees. Cornerstone reports that the City maintains over 20 different health insurance plans for its active and retired employees. In Cornerstone's opinion (which I agree), this multitude of health plans is a serious obstacle to the City's cost cutting efforts. In addition, Cornerstone has estimated that the City can save approximately $7,874,152 in annual costs by converting all active and retired employees to three insurance providers. I have been able to negotiate this important change for most active employees through their respective bargaining units. However, those same bargaining units have refused to negotiate changes for current retirees.

Cornerstone advises that the significant number of healthcare plans increases administrative costs, employee time and effort. In addition, the multitude of healthcare plans places a serious obstacle to future competitive bidding for the City's health insurance as potential bidders have to incorporate managing a multitude of plans as part of a bid response. Due to the number of plans, future bids for health insurance would most likely be inflated to accommodate the significant administrative time in monitoring and maintaining those plans.

Consequently, based on Cornerstone's analysis and recommendation, I have determined that consolidation to three (3) primary health insurance plans for all active employee and retiree plan participants is necessary to reduce costs and present the most favorable climate for the City in future bids of health insurance plans, scheduled to occur in 2012. In addition, the move to three

Hon. Andrew Dillon, Treasurer
State of Michigan
April 23, 2012
Page 2

(3) insurance plans that includes important cost-sharing obligations by active employees and retirees will save the City significant annual costs. The vast majority of the cost savings is dependent upon having the retirees in the same healthcare plans as the active employees.

This correspondence is to advise you that in my capacity as Emergency Manager of the City, I am seeking to invoke the action allowed under Section 19(k) regarding collective bargaining agreements as provided in the Local Government and School District Fiscal Accountability Act ("Act"), MCL 141.1519(k). Section 19(k) provides that both the Emergency Manager and the State Treasurer shall determine that four conditions are satisfied in order to allow modification of an existing collective bargaining agreement. I am seeking to modify the existing collective bargaining agreement for the above referenced bargaining unit to allow healthcare plan consolidation and modification for retirees. At this time, due to the unwillingness of the Union to bargain and effectuate these changes on behalf of its retirees, the action permitted under Section 19(k) is necessary.

## Background

The City has been in financial crisis for a number of years. I was appointed as Emergency Manager on November 29, 2011. After my initial assessment of the financial status of the City, it became apparent that substantial cost-cutting and organizational changes were required for the City to have a chance at succeeding with its Deficit Elimination Plan.

Attorney John Clark and other members of my team have met with the Union on multiple occasions to discuss the proposed changes. The Union has agreed to the changes with regard to active employees, but not retirees. It is my judgment that a satisfactory resolution cannot be obtained with regard to retirees.

## Collective Bargaining Agreement Provisions At Issue

Based upon the facts and determinations set forth above, the City requests the modification of the collective bargaining agreements as they apply to retiree healthcare coverage. The proposed modifications are outlined below.

Article 27.    Hospitalization Insurance

The Employer agrees to provide eligible retirees and their eligible spouses and dependents healthcare coverage subject to the terms below:

Section 1.

The City shall not provide healthcare coverage for the retiree's spouse if the spouse is eligible to receive paid healthcare coverage through an employer or former employer of the spouse. As a condition of continued spousal healthcare coverage under this section, the City may require that a retiree file a yearly affidavit attesting that the spouse is eligible for no other employer-paid healthcare coverage.

Hon. Andrew Dillon, Treasurer
State of Michigan
April 23, 2012
Page 3

Section 2.

 (a) Effective July 1, 2012, the Employer will offer eligible retirees the following healthcare coverage plans:

  (i) BCBSM Community Blue PPO Plan CB 12 PPO with $1,000/$2,000 deductible and with $10/40/80 prescription drug coverage
  (ii) Health Plus Plan DVDF with $20/40/60 prescription drug coverage
  (iii) McLaren Health Plan C6 with $10/40/80 prescription drug coverage

 The Employer may offer a high deductible plan in conjunction with a health savings account, to be offered in a special open enrollment not subject to subsection (c) below.

 These health coverage plans will include a mandatory mail-order maintenance prescription drug program for retirees. Retirees may change their coverage elections during an open enrollment held before July 1, 2012, and during subsequent annual enrollment periods scheduled by the Employer. Plan coverage will be subject to the coverage terms and regulations of each carrier.

 (b) The Employer may, at its discretion, amend the health coverage plans offered, add new health coverage plans, or remove health coverage plans. The Employer may change the open enrollment periods for existing health coverage plans, but not more often than twice annually.

 (c) The Employer reserves the right to change or discontinue the existing health insurance benefit program in response to the Patient Protection and Affordable Care Act ("PPACA"), as amended. This includes the right to respond to regulations issued under the PPACA or judicial interpretations of the PPACA.

 (d) The City's contribution for a retiree's health coverage, and to the HSA, if applicable, shall be the lesser of (i) the applicable annual single, double or family coverage contribution limits provided in Section 3 of the Michigan Publicly Funded Health Insurance Contribution Act, 2011 PA 152, as adjusted by the State Treasurer for each subsequent coverage year, or (ii) the actual annual costs or illustrative rate for the elected health coverage, plus contributions to the Employee's HSA, if applicable. The retiree will pay any premium contributions that exceed the amount contributed by the employer through pension check deductions.

 A City of Flint retiree aged sixty-five (65) or over will be covered by a Medicare supplemental plan at the Employer's expense, subject to the contribution limits provided in Section 3 of the Publicly Funded Health Insurance Contribution Act, 2011 PA 152, and the retiree must enroll in and pay for Medicare Supplemental Part B. The spouse of a City of Flint retiree aged sixty-five (65) or over will be covered by a Medicare supplemental plan at the Employer's expense, subject to the contribution limits provided in Section 3 of the Publicly Funded Health Insurance Contribution Act, 2011 PA 152, but the spouse must enroll in and pay

Hon. Andrew Dillon, Treasurer
State of Michigan
April 23, 2012
Page 4

retiree must enroll in and pay for Medicare Supplemental Part B. The spouse of a City of Flint retiree aged sixty-five (65) or over will be covered by a Medicare supplemental plan at the Employer's expense, subject to the contribution limits provided in Section 3 of the Publicly Funded Health Insurance Contribution Act, 2011 PA 152, but the spouse must enroll in and pay for Medicare Supplemental Part B.

All coverage shall terminate upon the death of the retiree; except where the retiree selected a Survivorship pension for their spouse and such coverage shall continue as long as the retirees spouse continues to receive retirement pension benefits.

A City of Flint retiree may purchase healthcare coverage for the retiree's spouse or dependents on the same terms as offered to current regular Employees, and at the prevailing group rate for the selected plan. The retiree must agree to deduction of premium costs from the retiree's pension payments.

### Determinations Under Section 19(k)

In my sole discretion and judgment, as Emergency Manager, after meeting and conferring with the Union and its representatives, a prompt and satisfactory resolution is unlikely to be obtained. I determine that all the following conditions of Section 19(k) have been satisfied to modify the parties' collective bargaining agreement as set forth above:

> (i) **The financial emergency in a local government has created a circumstance into which it is reasonable and necessary for the State to intercede to serve a significant and legitimate public purpose.**

As a part of addressing the financial emergency in the City, an independent review of active employee and retiree healthcare plans was made by Cornerstone. It was determined that the City could save $7,874,152 annually by consolidating the plans, which necessitated changes in coverage for employees and retirees. About $6,294,842 of the savings is attributable to retiree benefits. As part of this process, it will be necessary to negotiate similar contract modifications with representatives of the City's five (5) other bargaining units.

The intercession of the State serves a significant and legitimate public purpose concerning these consolidations and changes for employees in Flint and addressing the financial emergency in Flint.

> (ii) **Any plan involving the rejection, modification, or termination of one or more terms and conditions of an existing collective bargaining agreement is reasonable and necessary to deal with the broad, generalized economic problem.**

The projected accumulated deficit for the FY-12 fiscal year is $18,000.000. Should the requested consolidation and contract modifications as set forth herein be effectuated, the deficit will decrease by approximately $7,874,152 and place the City in a better position for future

Hon. Andrew Dillon, Treasurer
State of Michigan
April 23, 2012
Page 5

competitive bidding on employee healthcare plans. The plan to consolidate and modify contracts is reasonable and necessary to deal with the City's economic problems.

> (iii) **Any plan involving the rejection, modification, or termination of one or more terms of an existing collective bargaining agreement is directly related to and designed to address the financial emergency for the benefit of the public as a whole.**

The consolidation of active employee and retiree healthcare plans will not only produce cost savings, but will increase the likelihood of more competitive bids from healthcare providers and payroll companies in the future. The plan is directly related to and designed to address the City's financial emergency for the benefit of the public as a whole.

> (iv) **Any plan involving the rejection, modification, or termination of one or more terms and conditions of an existing collective bargaining agreement is temporary and does not target specific classes of employees.**

The proposed contract modifications are to the term of existing contracts. Thereby, this plan is of a temporary nature, subject to review and renewal by the City. Additionally, this plan of healthcare consolidation and benefit changes does not target any specific group of employees. Rather, it concerns all employees and retirees of the City and is applicable to all non-union employees, as well as the City's unionized workforce and retirees.

Based on the foregoing, I request your written concurrence with my determination pursuant to Section 19(k) of the Act. Time is of the essence. The City's new fiscal year begins July 1, 2012. In order to have maximum impact on the 2012/2013 fiscal year and given the time frame for notices on healthcare plans to active employees and retirees, I urge prompt consideration of this request.

Sincerely,

*Michael K. Brown*

Michael K. Brown
Emergency Manager


cc:   Roger Fraser, Deputy State Treasurer