UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN WELCH, ET AL.,

        Plaintiffs,

v.

MICHAEL BROWN, ET AL.,

        Defendants.
_____/

Case No.  12-13808

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE MONA K. MAJZOUB

## ORDER GRANTING IN PART DEFENDANT FLINT'S EMERGENCY MOTION TO MODIFY PRELIMINARY INJUNCTION [39]

This is a putative class action on behalf of retirees whose health benefits were altered by a plan proposed by the Emergency Manager of the City of Flint.  On March 29, 2013, the Court entered an Order Granting Preliminary Injunction [17] enjoining the city from modifying retiree health benefits.  The Sixth Circuit stayed the preliminary injunction during the pendency of Defendants' interlocutory appeal until January 3, 2014, when the Sixth Circuit affirmed the initial grant of the preliminary injunction.

Before the Court is Defendant Flint's Emergency Motion to Modify Preliminary Injunction [39]; Plaintiffs' Response [41], Flint's Reply [43]; Plaintiffs' Sur-Reply [44]; Plaintiffs' June 18, 2014 Status Report [45]; Flint's June 23, 2014 Status Report [47]; and Plaintiffs' June 23, 2014 Status Report.  Changes in factual conditions

warrant modification of the preliminary injunction, therefore, Defendant Flint's Motion [39] is **GRANTED in part**.

The Court held a conference with the attorneys on June 18, 2014 regarding Flint's Motion [39]. Counsel agreed to reconvene on June 20, 2014 with necessary third-parties to work toward submitting a stipulated alternative proposal to modify the preliminary injunction by June 23, 2014. The purpose of the June 20 meeting was to give both parties a chance to give input on the alternative proposal. The parties were unable to reach an agreement regarding an alternative proposal and each side filed a status report in lieu of a stipulated proposal. Ultimately, Defendants submitted an alternative proposal and Plaintiffs asked for more time and submitted some proposed alternative terms. Because Michigan law requires Flint to balance its budget each year, M.C.L. 141436(7) and Flint's fiscal year begins July 1, the Court agreed to rule on Flint's Motion [39] before July 1, 2014 if the parties could not reach an agreement. If Flint fails to balance its budget for Fiscal Year 2015 ("FY15"), the State of Michigan has the discretion to withhold revenue-sharing. M.C.L. 141.921. The Court took each sides' proposals under consideration in the modifications ordered here and did not fully adopt either sides' proposed terms, hence Flint's Motion [39] is granted only in part.

The prior factual background of this case is recited in detail in this Court's previous Order [17]. Flint now moves to modify the preliminary injunction based on

new information available to the Court and parties that was not available at the time the injunction was issued. The relevant factual inquiries for this Order, therefore, are since the time the Motion [39] was filed on May 23, 2014. *See City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427 (6th Cir. 2014) (*en banc*) ("[t]he district court [should] conduct. . . analysis of whether the reductions and eliminations were necessary and reasonable *when made* [and] if any[] practical alternatives existed") (emphasis added).

The Court retains the power to modify injunctions as part of its authority "to relieve inequities that arise after the original order." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012). To obtain modification or dissolution of an injunction, a movant must demonstrate significant "changes in fact, law, or circumstance since the previous ruling." *Id.* "Newly discovered evidence can be the basis for a motion to modify." *Id.* "It is not enough that the party was merely previously unaware of evidence's existence; the evidence must not have been "reasonably discoverable by due diligence during the original proceeding." *Id.* at 415 (internal citations omitted).

The new evidence upon which Flint and this Order relies is the city's financial condition since May 23, 2014. At the time of the original proceeding in March 2013, it would have been impossible for Defendants, or anyone, to know the financial condition of the city over a year into the future. The Court is satisfied, therefore, that

the evidence considered in this Order was not "reasonably discoverable during the original proceeding." *Id.* at 415.

"When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Sierra Club v. United States Army Corp of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984) *accord DSQ Property Co., Ltd. v. DeLorean,* 745 F.Supp. 1234, 1246 (E.D. Mich. 1990) (Rosen, J.); *Yolton v. El Paso Tenn. Pipeline Co.,* 2007 WL 3037709 at *2 (E.D. Mich. 2007) (Duggan, J.). An equitable remedy should be enforced only so long as equities require. *In re Detroit Auto Dealers Ass'n, Inc.*, 84 F.3d 787, 789 (6th Cir. 1996). When the Court entered its Order Granting Preliminary Injunction [17], it fully considered and balanced four factors when deciding to issue the preliminary injunction: (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury if the relief is not issued; (3) whether issuance of a preliminary injunction would cause substantial harm to third parties; and (4) whether the public interest would be served by issuance of a preliminary injunction. *Sandison v. Mich. High Sch. Athletics Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995). For the purposes of this Order, Flint has satisfactorily demonstrated a significant change in how factors three and four weigh in this case.

Based on the new evidence submitted by Flint, the Court is now convinced that a failure to reasonably modify the preliminary injunction will substantially harm third

parties and will not serve the public interest. Flint has demonstrated that its abilities to raise revenue and or cut expenditures is presently severely curtailed.

Defendants will be forced to cut Flint's public safety budget if the preliminary injunction is not modified. This would harm both the third parties and the public interest. During the pendency of this litigation, Flint has drastically reduced expenditures all other areas—including benefits for current employees—in FY13 and FY14. Now, the only area left to significantly cut expenditures in Fiscal Year 2015 is in public safety. In the FY15 budget, as currently proposed without altering retiree benefits, Flint would cut 36 police officer positions via attrition—leaving 115 filled police officer positions. Flint will also cut 19 of 94 firefighter positions due to the loss of a federal grant for unspecified reasons. In 2012, Flint voters approved a 6 mill increase for public safety. Defendants argue—and the Court agrees—that indicates that public safety is one of the Flint citizenry's foremost concerns.

Additionally, Flint has demonstrated that raising more revenue is foreclosed as an option to avoid modifying the preliminary injunction in this case. Defendants have demonstrated that they could not raise revenue via municipal bonds. Flint does not have access to municipal bonds to cover unfunded healthcare benefits because it is not creditworthy for that purpose. Issuing municipal bonds to cover unfunded healthcare benefits requires a AA rating and Flint has no credit rating. Gerald Ambrose, the financial advisor to the Emergency Manager, submitted a sworn statement that issuing

municipal bonds to cover healthcare benefits is not a viable option for Flint. [39-7] at ¶ 22. Plaintiffs counter that Flint issued municipal bonds to cover a new water system. Flint's ability to finance other projects—which require different credit ratings and allow Genessee County to act as guarantor—is irrelevant to a determination of whether Flint can issue healthcare bonds. Additionally, the water system construction will yield savings over time to Flint.

Defendants have demonstrated that they could not raise revenue via a millage. Flint residents must approve any millage increase via direct democracy vote. Mich. Const. Art. IX, sec. 25. Time constraints do not allow Defendants to feasibly pursue that option. Additionally, an increase in millage would not cover the cost of retiree healthcare benefits. Michigan law restricts any municipality's millage to 20 mills and Flint is currently at 19.1 mills. Increasing Flint's millage to 20 mills would yield about $700,000 of revenue, not nearly enough to make a significant impact on Flint's projected $9 million of retiree healthcare expenses if the injunction is not modified.

Defendants have demonstrated that they could not raise revenue via increased utility rates. In anticipation of retiree healthcare obligations, Flint has proposed a 5–6% increase in sewage rates. However, due to the significant delinquency and shutoff rate, a utility increase is not likely to raise sufficient revenue. The same reasoning applies to garbage collection and street light assessments.

Since March 29, 2013, Flint has explored other revenue-raising methods to no avail. There is no market to sell Hurley Medical Center due to its legacy costs, which makes it unappealing to investors. A proposed bill in the state Legislature to increase income tax in Flint never came to a vote. Only $2.7 million of Flint's cash is unrestricted and those funds are reserved for one-time uses and cannot be used to cover ongoing healthcare obligations.

New evidence demonstrates that a failure to reasonably modify the preliminary injunction will substantially harm third parties and will not serve the public interest.

Accordingly,

**IT IS ORDERED** that Defendant Flint's Emergency Motion to Modify Preliminary Injunction [39] is **GRANTED in part**.

**IT IS FURTHER ORDERED** that the Order Granting Preliminary Injunction [17] is **HEREBY MODIFIED** as follows:

During the pendency of this litigation, the City of Flint shall maintain the following health insurance coverage for the subject retirees effective July 1, 2014:

(1) BCBSM Medicare Advantage Plan

(a) In-Network Office Visit copay is reduced from $15 to $10.

(b) Calendar Year In-Network Deductible remains at $500 per member.

(c) In-Network coinsurance is reduced from 10% to 5%, with out-of-pocket maximum remaining at $1,500.

    (d) All else remains as currently provided.

(2) BCBSM Plan for Non-Medicare Retirees and/or Dependents

    (a) Single calendar year In-Network deductible is reduced from $1,000 to $500 and family calendar year deductible is reduced from $2,000 to $1,000.

    (b) Annual In-Network coinsurance maximum is reduced from $2,500 to $1,500 for single contracts, and from $5,000 to $3,000 for family contracts.

    (c) All else remains as currently provided.

(3) HealthPlus Plan Non-Medicare Retirees and/or Dependents

    (a) Single calendar year deductible is reduced from $1,000 to $500, and family deductible is reduced from $2,000 to $1,000.

    (b) Annual medical out-of-pocket maximum is reduced from $4,000 to $1,500 for single contracts, and from $8,000 to $3,000 for family contracts.

    (c) All else remains as currently provided.

(4) Prescription Drug Carrier Change for BCBS Medicare Eligible Retirees and/or Dependents

    (a) Medicare retirees with BCBSM Rx will be moved to Express Scripts Rx.

(b) Medicare retirees currently with flat dollar Rx plans, i.e. $5 for both generic and brand name drugs, will be changed to a $0 generic copay and their brand name copay will remain as current, which in this example is $5.

(5) McLaren Non-Medicare and HealthPlus Medicare Advantage Plans for Retirees and/or Dependents are unchanged and remain as currently provided.

(6) Post July 2000 Retiree Rx Coverage

There will be no change in the current Rx co-pays for retirees who retired on or after July 1, 2000.

(7) Carriers and Plans

Defendants (and Plaintiffs) retain the right in the future to petition the Court to further modify or vacate the preliminary injunction in this case. Defendants do not derive the right from this Order to unilaterally change carriers/administrators, plan designs, co-pays, and coinsurance.

(8) Hardship Program

Although the above reduces deductibles and coinsurances for many, there may still be instances where severe hardship may occur. The City shall implement a hardship program that includes a City contribution of $200,000 for the group of retirees. This amount will be replenished

annually in order to maintain $200,000 during the periods of the above coverage. The parties are encouraged to discuss the rules surrounding hardship fund distribution.

(9) Retiree Health Care Plan Liability

The parties may discuss the transfer of responsibility and liability for retiree healthcare to a competent entity, in exchange for a fixed per retiree payment, based on Flint's current expenses.

(10) Reimbursement under the Preliminary Injunction

Flint will reimburse retirees for out-of-pocket medical and prescription drug expenses which have been verified by a third-party administrator to be in excess of the pre-change plans. Only expenses that were incurred from January 3, 2014 through June 30, 2014 are eligible for reimbursement.

(11) Retiree Contributions

The City will utilize the State of Michigan PA 152, M.C.L. 15.563 hard caps as a mechanism to charge retiree contributions for costs that exceed the annual caps. The parties are also encouraged to discuss the rules surrounding retiree contributions.

**IT IS FURTHER ORDERED** that Plaintiffs do not waive any claims that Defendants are non-compliant in their reimbursement obligations for claims incurred from January 3, 2014 through June 30, 2014.

**SO ORDERED.**

Dated: June 30, 2014

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge